UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAMUEL CUELLAR,

      Plaintiff,

                               Case No. 20-cv-12669

v.                                   Hon. Matthew F. Leitman

WILLIS CHAPMAN,

      Defendant.

_____/

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS (ECF No. 1) AND GRANTING BOTH A LIMITED CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS**

Petitioner Samuel Cuellar was convicted of armed robbery after a two-day jury trial in October 2013.  He is currently serving a sentence of 25-50 years in the custody of the Michigan Department of Corrections ("MDOC").

Cuellar has filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. (*See* Pet., ECF No. 1.)  In his petition, he claims that his attorney erroneously failed to advise him that he would be subject to a mandatory 25-year sentence if he was convicted as charged at trial.  Cuellar further claims that if his attorney had properly advised him that he was subject to the mandatory minimum, he would have accepted an offer by the prosecution to plead guilty in exchange for a recommendation by the prosecution that the trial court impose a minimum sentence of just over ten years.  Cuellar brings claims for ineffective assistance of trial counsel

1

and appellate counsel.  He also contends that the state trial court wrongly denied his motion under state law to vacate his conviction and sentence.

For the reasons explained below, Cuellar's petition is **DENIED**.

**I**

**A**

Cuellar's armed robbery conviction arose out of an incident that occurred in Saginaw County.  The Michigan Court of Appeals summarized the facts underlying his conviction as follows:

> Dawn Smith and Courtney Clover were working at a Speedway gas station around 6:30 a.m., when a Hispanic man entered the store wearing a hooded sweatshirt (with the hood pulled up) and at least one black glove. He was carrying a pistol. He said, "this is a stickup, give me all your money." After taking the money from both registers, he left the store, turned to the right once he was outside, and got into a red Dodge pickup truck. Carrie Lockhart, a customer who was leaving the store as the armed robber entered, had been sitting in her car watching the robbery through the store's window. She followed the robber in her car west on King Road, but eventually lost him and returned to the Speedway to give the police a statement.
>
> After speaking with Smith, Clover, and Lockhart, Sergeant Jeff Roberts of the Bridgeport Township Police Department radioed a description of the suspect as a Hispanic male driving a red Dodge pickup last seen heading westbound on King and then westbound on Williamson Road. Officer Todd Brow of the Buena Vista Police Department heard the description, saw a red Dodge pickup in that vicinity, and observed as it traveled northbound on Sheridan Avenue and turned into a church parking lot on the corner of Sheridan Avenue and Treanor Street. When Brow pulled his marked patrol car behind the truck and shined his lights on it, defendant got out of the truck and ran westbound behind the church and then northbound along Sheridan. Brow pursued in his patrol car, while Deputy Adrian Wise of the Saginaw Sheriff's Department

2

pursued on foot. Defendant was apprehended while attempting to climb an approximately four-foot high chain fence. Brow got out of his car, and both he and Wise told defendant numerous times to stop. When defendant was at the top of the fence attempting to climb over, Brow tased him, and defendant fell on the opposite side of the fence. Both officers jumped over the fence, and as they were attempting to subdue and handcuff defendant, $ 335 fell from underneath his clothes. The manager of the Speedway, Debra Sanchez (who was not present for the robbery) had determined that $ 340 was missing from the gas station. Other officers found a BB gun on the ground near the south side of the church. Brow brought defendant to the Speedway, where Smith, Clover, and Lockhart identified defendant as the armed robber. Defendant's vehicle was impounded and searched pursuant to a warrant. A hooded sweatshirt, a pair of black gloves, and a black stocking cap were seized from the truck.

At trial, defendant insisted that he had never been to that particular Speedway. He testified that, on the night in question, he had parked in the church parking lot to sell Vicodin pills and marijuana to his daughter's friend in an adjacent house, and to retrieve his grandson's BB gun from the friend's house. He said that, as he returned to his truck, Brow pulled into the church parking lot, and the first thing he thought of was getting rid of the Vicodin and marijuana he still had in his pocket. He said he dropped the BB gun, and when he was unable to avoid the lights of Brow's patrol car, he started running, attempted to climb a fence, and was tased in the back.

*People v. Cuellar*, No. 319872, 2015 WL 5945368, at *1–2 (Mich. Ct. App. Oct. 13, 2015).

**B**

The claims in Cuellar's petition arise out of the pretrial proceedings in his case. Following the incident described above, the Saginaw County Prosecutor charged Cuellar with one count of armed robbery in violation of Mich. Comp. Laws § 750.529. (*See* Information, ECF No. 8-35, PageID.1293.) The charging document

3

filed against Cuellar in the Saginaw County Circuit Court – known as an "Information" – also notified Cuellar that the prosecution was seeking to enhance his sentence on the basis that he was a fourth habitual offender. (*See id.*)  The Information identified three of Cuellar's prior felony convictions and stated that upon conviction for the charged armed robbery, Cuellar would be "subject to the penalties provided by MCL 769.12." (*Id.*, PageID.1294.)  That Michigan statute (the "Fourth Habitual Offender Statute") governs sentencing for offenders who are convicted of a fourth felony.  In relevant part, it provides that:

> (1) If a person has been convicted of any combination of 3 or more felonies or attempts to commit felonies, whether the convictions occurred in this state or would have been for felonies or attempts to commit felonies in this state if obtained in this state, and that person commits a subsequent felony within this state, the person shall be punished upon conviction of the subsequent felony and sentencing under section 13 of this chapter as follows:
>
> > (a) If the subsequent felony is a serious crime or a conspiracy to commit a serious crime, and 1 or more of the prior felony convictions are listed prior felonies, the court shall sentence the person to imprisonment for not less than 25 years. Not more than 1 conviction arising out of the same transaction shall be considered a prior felony conviction for the purposes of this subsection only.
> >
> > (b) If the subsequent felony is punishable upon a first conviction by imprisonment for a maximum term of 5 years or more or for life, the court, except as otherwise provided in this section or section 1 of chapter XI, may sentence the person to imprisonment for life or for a lesser term.

(c) If the subsequent felony is punishable upon a first conviction by imprisonment for a maximum term that is less than 5 years, the court, except as otherwise provided in this section or section 1 of chapter XI, may sentence the person to imprisonment for a maximum term of not more than 15 years.

(d) If the subsequent felony is a major controlled substance offense, the person shall be punished as provided by part 74 of the public health code, 1978 PA 368, MCL 333.7401 to 333.7461.

Mich. Comp. Laws § 769.12(1).

The Information also addressed Cuellar's sentencing exposure under the Fourth Habitual Offender Statute.  The Information said: "PENALTY: Life if primary offense has penalty of five or more years; 15 years or less if primary offense has penalty under 5 years.  The maximum penalty cannot be less than the maximum term for a first conviction." (Information, ECF No. 8-35, PageID.1294.)

When the Information was filed, neither of the parties seemed to recognize that the "PENALTY" provision of the Information was in apparent tension with the Fourth Habitual Offender Statute.  As noted above, the statute provides that a defendant who has been convicted of three prior felonies or attempts to commit felonies "shall" be sentenced to a mandatory minimum term of 25 years in prison if (1) he is convicted of "a serious crime or conspiracy to commit a serious crime" and (2) one or more his prior felony convictions was for a "listed" felony. Mich. Comp. Laws § 769.12(1)(a).  Cuellar's circumstances satisfied both of those conditions.  He

5

was charged with armed robbery in violation of MCL § 750.529, which is a "serious crime" under Michigan law. *See* Mich. Comp. Laws § 769.12(6)(c).  Moreover, his prior conviction for Criminal Sexual Conduct in the First Degree in violation of MCL §750.520b, qualified as a "listed" felony under Michigan law. *See* Mich. Comp. Laws § 769.12(6)(a)(iii).  Thus, Cuellar apparently faced a mandatory minimum sentence of 25 years in custody if convicted as charged at trial.  But the "PENALTY" provision did not say that Cuellar faced that sentence.  Indeed, as noted above, it did not identify any mandatory minimum sentence.

Cuellar's defense counsel reviewed the Information and determined that Cuellar was not subject to a mandatory minimum sentence of 25 years in custody because the Information did not list that sentence as a possible penalty. (*See* 3/14/2019 Hearing Transcript, ECF No. 8-36, PageID.1301.)  Counsel seemed to assume that even though the Fourth Habitual Offender Statute used mandatory language – providing that a trial court "shall" impose the mandatory minimum upon a defendant in Cuellar's position – the prosecution had the discretion not to seek that penalty. (*See id.*)  And Cuellar's trial counsel appeared to conclude that since the "PENALTY" provision of the Information did not mention the 25-year mandatory minimum, that meant that the prosecution had elected not to pursue that sentence. (*See id.*)  Counsel therefore did not advise Cuellar that he faced a mandatory minimum sentence of 25 years if convicted as charged at trial. (*See id.*)

**C**

On the morning that Cuellar's trial was set to begin, the prosecution offered Cuellar a plea deal. The prosecution offered to recommend a minimum sentence of ten and a half years if Cuellar pled guilty "as charged." (*See* Trial Transcript 1/3, ECF No. 8-9, PageID.193.) The prosecution did not seem to recognize the possible tension between the terms of its offer and the language of the Fourth Habitual Offender Statute. As noted above, the statute arguably required the trial court to impose a minimum sentence of 25 years if Cuellar was convicted "as charged," but the offer contemplated that the court had the discretion to impose a lesser sentence.

Cuellar discussed the offer with his attorney and rejected it. At that point, Cuellar's attorney placed the terms of the offer and Cuellar's decision to reject it on the record:

> I do want to put one thing on the record at this junction. As of today's date [the prosecutor] did extend an offer that if Mr. Cuellar pled guilty as charged, acknowledged his HOA status, they would recommend the bottom of the guidelines which have been scored at 126 to a maximum range – a minimum sentence of 420 months. Mr. Cuellar, to my understanding, is rejecting that offer and wishes to proceed to trial.

(Trial Transcript 1/3, ECF No. 8-9, PageID.193.)

Cuellar then confirmed that he understood the terms of the plea deal and wished to proceed to trial. The exchange between Cuellar and the court proceeded as follows:

THE COURT: Mr. Cuellar, did you hear the plea offer that was made to you?

THE DEFENDANT: Yes, I did.

THE COURT: Do you understand that it's just basically a 10 year sentence on the low end of the guidelines?

THE DEFENDANT: Yes.

THE COURT: You understand you're facing a potential additional 24 years plus, if convicted by a jury?

THE DEFENDANT: Yes.

THE COURT: Okay.  You sure you want to reject that offer?

THE DEFENDANT: Yes, I do.

THE COURT: Okay.

THE DEFENDANT: I wish to proceed to trial.

(*Id.*)  This exchange reveals that the court, like the parties, did not appear to recognize that Cuellar was potentially subject to a 25-year mandatory minimum if he was convicted – even by plea – "as charged."

### D

After Cuellar rejected the plea offer, the case was tried to a jury.  The jury convicted Cuellar of the armed robbery charge in the Information.

The court later imposed a sentence of 25 to 50 years in prison. (12/5/2013 Sentencing Transcript, ECF No. 8-12, PageID.323.)  But the court did not say that it was imposing the 25-year minimum term because the Fourth Habitual Offender Statute required it do so.  In fact, the Court did not mention that statute at all during sentencing.  Instead, the court focused on Cuellar's sentencing range under the Michigan Sentencing Guidelines.  The court said that the minimum sentence of 25 years fell "relatively in the middle of the guidelines." (*Id.*)  At the time of Cuellar's

sentencing, Michigan's Sentencing Guidelines were mandatory – just as the United States Sentencing Guidelines were mandatory before *U.S. v. Booker*, 543 U.S. 220 (2005).

E

Cuellar appealed his conviction and sentence to the Michigan Court of Appeals.  In an unpublished decision, that court affirmed Cuellar's conviction. *Cuellar*, 2015 WL 5945368, at *1.  But the court remanded so that the trial court could reconsider Cuellar's sentence in light of a change in Michigan law that occurred after his sentencing.  The change was the result of the Michigan Supreme Court's decision in *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015).  In that case, the Michigan Supreme Court held that Michigan's Sentencing Guidelines must be treated as advisory, rather than mandatory, in order to comply with the Sixth Amendment. *See id.*  In light of *Lockridge*, the Court of Appeals remanded Cuellar's case to the trial court so that it could "determine whether it would have imposed a materially different sentence if it had been aware of the advisory nature of the guidelines." *Cuellar*, 2015 WL 5945368, at *7-8.

Before the case was remanded, Cuellar filed an application for leave to appeal in the Michigan Supreme Court, but that court denied his application because it was not persuaded that he had presented any questions that should be reviewed by the court. *See People v. Cuellar*, 477 N.W.2d 730 (Mich. 2016) (table).

**F**

When the case returned to the trial court following the *Lockridge* remand, the prosecutor argued to the trial court for the first time that Cuellar *was* subject to a 25-year mandatory minimum sentence under the Fourth Habitual Offender Statute. (*See* Sentencing Memo, ECF No. 2-4. PageID.60-61.)  The prosecutor further argued that, if the trial court proceeded with resentencing, it should "impose the statutory mandatory minimum of 25 years in prison and increase the defendant-appellant's maximum sentence to life in prison." (*Id.*)

In light of the prosecutor's sentencing memorandum, Cuellar's appellate counsel – who represented Cuellar on remand – advised him that pursuing resentencing may be unwise:

> The prosecutor makes an argument I hadn't considered that you are subject to a *mandatory* 25 year minimum under the relatively new "super habitual" sentencing provision of MCL 769.12(2).  A quick look at the statute and your presentence report tells me the prosecutor may be correct.  If so, I don't think it makes sense to continue our pursuit of resentencing – we'd be taking a risk of a longer sentence without any hope of reducing your minimum term.

(11/4/2015 Letter, ECF No. 2-5, PageID.64.)

Cuellar thereafter filed a pro se motion in which he (1) argued that his trial counsel was ineffective for failing to advise him that he faced a mandatory minimum sentence, (2) sought relief from his conviction, and (3) requested permission to file an interlocutory appeal. (*See* 12-9-2016 Mot., ECF No. 8-18.)  The trial court denied

10

that motion because it did not comply with court rules. (*See* 1-10-2017 Denial, ECF No. 8-32, PageID.1257.)  Cuellar then asserted the ineffective assistance of counsel claim in at least one additional motion that he filed in the trial court. (*See, e.g.*, Mot. for Ginther Hearing, ECF No. 8-15, PageID.604.)

The trial court convened a hearing to discuss the *Lockridge* remand on September 13, 2017.   During that hearing, the trial court informed Cuellar that it had not considered the mandatory-minimum provision of the Fourth Habitual Offender Statute when it imposed its original 25-50 year sentence. (*See* 9/13/2017 Hearing Transcript, ECF No. 8-17. PageID.651.)  The court explained that it instead based its sentence on "the facts of this case" and Cuellar's "past criminal history, which is quite extensive." (*Id.*)  The court further advised Cuellar that he "probably h[ad] a better shot in going up in your sentence rather than going down" if he chose to be re-sentenced under *Lockridge*. (*Id.*, PageID.652.)  Based on the trial court's advice, Cuellar decided that he did not wish to be resentenced. (*See Lockridge* Withdrawal, ECF No. 8-16, PageID.646.)  Thus, Cuellar remained subject to the original sentence of 25-50 years.

## G

Two months later, Cuellar submitted a Motion for Relief from Judgment under Rule 6.501 of the Michigan Court Rules. (*See* Saginaw County Register of Actions, ECF No. 8-1, PageID.92.)  In that motion, Cuellar first argued that he was

11

denied effective assistance of counsel when his trial attorney failed to inform him that he was subject to the 25-year minimum under the Fourth Habitual Offender Statute. (12-1-2017 Order, ECF No. 2-7, PageID.70-71.) He also argued that he also received ineffective assistance of appellate counsel during his direct appeal when his appellate counsel failed to raise trial counsel's ineffectiveness. (*See id.*)

On December 1, 2017, the trial court denied Cuellar's Motion for Relief from Judgment. (*See id.*) The court held that Cuellar was not entitled to relief because he could have raised his claim that trial counsel was ineffective on direct appeal, but he failed to do so. (*See id.*, PageID.70.) The court further concluded that Cuellar could not prevail on his claim of ineffective assistance of appellate counsel. (*See id.*, PageID.71.) Cuellar filed a motion for reconsideration, but the trial court denied the motion on January 10, 2018. (*See* 1-10-2018 Order, ECF No. 2-8.)

Next, Cuellar applied for leave to appeal to the Michigan Court of Appeals. In lieu of granting leave to appeal, the Court of Appeals remanded the case to the trial court "for an evidentiary hearing and decision whether defendant was denied the effective assistance of counsel." (*See* 11/7/2018 Order, ECF No. 8-25, PageID.802.)

During the subsequent hearing, Cuellar, Cuellar's trial counsel, and Cuellar's appellate counsel during his direct appeal all testified. (*See* 3/14/2019 Hearing Transcript, ECF No. 8-36.) First, Cuellar's trial counsel testified that he did not

inform Cuellar of the 25-year mandatory minimum sentence under MCL 769.12(1)(a) because he did not believe that the minimum applied to Cuellar. (*See id.*, PageID.1301.)   According to the trial attorney, he believed that the 25-year minimum could not be applied to Cuellar because the prosecution did not charge Cuellar under that provision of the Fourth Habitual Offender Statute and did not notify Cuellar in the Information that he was subject to the 25-year mandatory minimum. (*See id.*)

Second, Cuellar's appellate counsel testified that he was aware that Cuellar had been offered a plea deal on the morning that his trial was set to begin, but he did not "investigate the plea offer to determine whether or not trial counsel properly informed Mr. Cuellar of the true nature of his charges and the direct consequences of rejecting the plea." (*Id.*, PageID.1318.)   Appellate counsel further acknowledged that he first investigated whether Cuellar was subject to a mandatory minimum sentence when the prosecution raised the issue in connection with the *Lockridge* remand. (*See id.*)

Finally, Cuellar testified that the prosecutor made him a "plea offer of 10 years." (*Id.*, PageID.1328.)   He added that he rejected the plea offer based on his trial counsel's advice that: (1) a key witness was unavailable to testify and (2) his sentence exposure upon a guilty verdict following trial would not be any different than the plea offer. (*See id.*, PageID.1328.)   He further testified that his trial counsel

13

never told him he was subject to a 25-year minimum sentence under the Fourth

Habitual Offender Statute, and he said that he would have accepted the plea offer

had he been properly informed of the 25-year minimum by his trial counsel. (*See id.*,

PageID.1329.)

The trial court rejected Cuellar's ineffective assistance of counsel claim and

denied his motion for relief from judgment. (*See id.*, PageID.1341.)   The court

concluded that Cuellar had not suffered any prejudice from his trial counsel's failure

to advise him about the 25-year mandatory minimum under the Fourth Habitual

Offender Statute because the statute played no role in the court's sentencing

decision.   The court explained its decision as follows:

> As I am reviewing this case I am thinking to myself that is a normal sentence
> somebody would get under those circumstances in this court, although
> everybody gets independent consideration.   But that sentence did not shock
> me based on the charges and his past record.   And, as I indicated on the record,
> I did not sentence him pursuant to the 25 year mandatory minimum, nor take
> it into consideration.   Therefore, any – whether or not he was informed of the
> 25 mandatory minimum is irrelevant and harmless there because he wasn't
> sentenced pursuant to that.   It was purely coincidental that his sentence was
> 25 to 50 years.   And for that reason I find that there was effective assistance
> of counsel.   And if there wasn't based on the 25 year mandatory minimum it
> would be harmless because it wasn't considered by the Court.

(*Id.*, PageID.1341-1342.)

Cuellar thereafter filed an application for leave to appeal in the Michigan

Court of Appeals. (*See* Mich. Ct. App. Application, ECF No. 8-26, PageID.937.)

That court denied leave to appeal because Cuellar "failed to establish that the trial

court erred in denying the motion for relief from judgment." (Mich. Ct. App. Order, ECF No. 8-26, PageID.907.)   Cuellar then applied for leave to appeal in the Michigan Supreme Court, but that court denied leave. (*See* Mich. Sup. Ct. Order, ECF No. 8-27, PageID.1070.)

## H

On September 15, 2020, Cuellar filed the instant petition for a writ of habeas corpus under 28 U.S.C. § 2254. (*See* Pet., ECF No. 1.)   In his petition, Cuellar argues that he is entitled to habeas relief on three grounds.   First, he claims that his trial counsel was ineffective for failing to advise him that he was, in fact, subject to the 25-year mandatory minimum under the Fourth Habitual Offender Statute. (*See id.*, PageID.7.)   He contends that his counsel should have recognized that he was subject to the mandatory minimum because the Fourth Habitual Offender Statute provides that a trial court "shall" impose that sentence on a defendant in his position. (*See* Reply, ECF No. 11, PageID.1369.)   And he insists that if trial counsel had properly advised him about his exposure to the mandatory minimum, he would have accepted the prosecution's plea offer.   He asks the court to vacate his conviction and order the prosecution to reinstate the plea offer. (*See* Pet. Br., ECF No. 2, PageID.36.)

Second, Cuellar argues that he received ineffective assistance of appellate counsel because his attorney during his direct appeal failed to raise the issue of his trial counsel's ineffective assistance.   (*See* Pet., ECF No. 1, PageID.7.)

Finally, Cuellar argues that the trial court abused its discretion by denying his Motion for Relief from Judgment. (*See id.*)

The Court ordered Respondent Willis Chapman to file a response in opposition to Cuellar's petition (*see* Order, ECF No. 5), and he did so on April 9, 2021. (*See* Resp., ECF No. 7.)  Respondent argued, among other things, that trial counsel's failure to advise Cuellar about the 25-year mandatory minimum did not constitute deficient performance because Cuellar was *not* subject to that sentence. (*See id.*, PageID.44.)  According to Respondent, Cuellar was not subject to the 25-year mandatory minimum because the Information filed against him did not specifically identify the provision of the Fourth Habitual Offender Statute that contains the mandatory minimum (i.e., Mich. Comp. Laws §769.12(1)(a)). (*See id.*, PageID.44-45.)  Respondent also argued that Cuellar's petition must be dismissed as untimely because he filed his petition 1,142 days after the one-year statute of limitations under AEDPA expired. (*See id.*, PageID.61.)  Cuellar filed a reply on August 6, 2021. (*See* Reply, ECF No. 11.)

For the reasons explained in greater detail below, the Court concludes that Cuellar's claims fail on the merits.  The Court therefore need not decide whether Cuellar's petition was timely under AEDPA. *See Smith v. State of Ohio Dept. of Rehabilitation,* 463 F.3d 426, 429, n. 2 (6th Cir. 2006) (explaining that AEDPA's

one-year statute of limitations is not jurisdictional and that the court may proceed to the merits of the petition "in the interest of judicial economy").

## II

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires federal courts to uphold state court adjudications on the merits unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). As Cuellar acknowledges, AEDPA governs here because the state trial court adjudicated Cuellar's claims on the merits. (*See* Petition, ECF No. 1, PageID.8.)

## III

### A

The Court begins with Cuellar's claim that his trial counsel was ineffective. An ineffective assistance of counsel claim has two components. A petitioner must show that counsel's performance was deficient and that the deficiency prejudiced the defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To meet the first

17

*Strickland* prong, a petitioner must establish that his attorney's representation "fell below an objective standard of reasonableness." *Id.* at 688.   In doing so, the petitioner must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that ... the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 688-89.

Second, the "prejudice" component of a *Strickland* claim "focuses on the question of whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).   To show prejudice under *Strickland*, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.   In order to demonstrate prejudice in cases where a petitioner argues that his attorney's ineffective assistance led him to reject a plea offer, the petitioner "must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's

terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler v. Cooper*, 566 U.S. 156, 164 (2012).

**B**

As framed by the parties, Cuellar's ineffective assistance of trial counsel claim turns, in large part, on whether Cuellar was, in fact, subject to the 25-year mandatory minimum sentence under the Fourth Habitual Offender Statute. Cuellar insists that he *was* subject to that sentence and that his trial counsel performed deficiently in failing to so advise him. Respondent counters that Cuellar was *not* subject to that sentence and that counsel therefore committed no error in failing to mention it.

The problem for Cuellar is that his ineffective assistance of trial counsel claim fails either way. If, as Respondent claims, Cuellar was *not* subject to the 25-year mandatory minimum sentence, then trial counsel did not perform deficiently in failing to so advise Cuellar. On the other hand, if, as Cuellar claims, he *was* subject to the 25-year mandatory minimum sentence, then he did not suffer any prejudice when he rejected the prosecution's plea offer. That is because if he *was* subject to the 25-year mandatory minimum, then the plea offer was a nullity that could not have been performed. Simply put, if he was subject to the 25-year mandatory minimum, then the trial court would have been *prohibited by law* from sentencing Cuellar consistent with the prosecution's recommendation of a ten-year sentence

under the plea offer.[1]  Because Cuellar could not have been sentenced consistent with the plea offer as a matter of law, Cuellar did not lose anything when he rejected the plea offer.  In short, there is no scenario under which Cuellar can demonstrate *both* deficient performance *and* prejudice, and his ineffective assistance of trial counsel claim therefore fails.

Cuellar recognizes the problem with his position.  He attempts to solve the problem by arguing that the prosecution's plea offer involved dropping the fourth habitual offender sentencing charge that was set forth in the Information. (*See* Pet. Br., ECF No. 2, PageID.16.)  He then argues that with the fourth habitual offender charge off the table, the trial court could have sentenced him below the 25-year mandatory minimum if he had pleaded guilty under the terms of the offer. (*See id.*, PageID.16, 25.)  But the record reveals that the offer did not involve dropping the fourth habitual offender charge.  On the contrary, as Cuellar's counsel explained on the record, the offer called for Cuellar to plead guilty "as charged" and to "acknowledge[] his [habitual offender] status." (10/15/23 Tr. Transcript 1/3, ECF No. 8-9, PageID.193.)  The Court therefore rejects Cuellar's argument that the trial

---

[1] If Cuellar had accepted the plea offer and the case had proceeded to sentencing, the trial court presumably would have recognized that Cuellar was subject to the mandatory minimum (if that was the case).  This Court will not grant relief on the basis that if Cuellar truly was subject to the mandatory minimum, the trial court would not have recognized that fact and would have erroneously sentenced Cuellar consistent with the prosecution's recommendation under the plea offer.

court could have sentenced him below the mandatory minimum because the plea offer took the Fourth Habitual Offender Statute out of play.

For all of these reasons, Cuellar is not entitled to relief on his claim that his trial counsel was ineffective.

## C

The Court next turns to Cuellar's claim that he received ineffective assistance of appellate counsel during his direct appeal because his appellate counsel failed to raise the issue of his trial counsel's alleged ineffectiveness. Cuellar cannot prevail on this claim because, for all of the reasons explained above, his claim that his trial counsel was ineffective lacks merit, and it is not ineffective assistance of counsel for an appellate lawyer to omit from appeal a meritless claim of ineffective assistance of trial counsel. *See Martin v. Mitchell*, 280 F.3d 594, 606 (6th Cir. 2002) (explaining that a petitioner cannot prevail on a claim that appellate counsel was ineffective for failing to raise a claim that trial counsel was ineffective where the "underlying ineffective assistance of trial counsel arguments lack merit").

## IV

The Court now turns to Cuellar's claim that "the trial court abused its discretion when it denied Petitioner[']s Motion for Relief from Judgment pursuant to MCR 6.508(D)(2) and (3)." (Pet. Br., ECF No. 2, PageID.34.) This claim seems

21

to rest upon alleged errors of state law, and thus it is not cognizable on federal habeas review. *See Long v.* Smith, 663 F.2d 18, 22-23 (6th Cir. 1981) ("In a habeas corpus proceeding, it is not the province of a federal appellate court to review the decision of the state's highest court on purely state law.").  And to the extent that the claim rests upon federal law, it mirrors his claims of ineffective assistance of counsel described above and fails for the same reasons that those claims fail.

## V

In order to appeal the Court's decision, Cuellar must obtain a certificate of appealability.  To obtain a certificate of appealability, a petitioner must make a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *See Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).  A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *See Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002).

The Court concludes that reasonable jurists could debate whether the claims for ineffective assistance of counsel in the petition should have been resolved in a different manner.  Thus, the Court will **GRANT** Cuellar a certificate of appealability

**LIMITED** to the claims of ineffective assistance of counsel. Moreover, the Court **GRANTS** Cuellar leave to proceed *in forma pauperis* on appeal. The standard for granting such leave is not as strict as the standard for certificates of appealability. *See Foster v. Ludwick*, 208 F.Supp.2d 750, 764 (E.D. Mich. 2002). While a certificate of appealability requires a substantial showing of the denial of a constitutional right, a court may grant *in forma pauperis* status if it finds that an appeal is being taken in good faith. *See id.* at 764-65; 28 U.S.C. § 1915(a)(3). In this case, an appeal could be taken in good faith. Accordingly, the Court **GRANTS** Cuellar permission to proceed in forma pauperis on appeal.

## VI

For the reasons stated above, the Court (1) **DENIES WITH PREJUDICE** Cuellar's petition for a writ of habeas corpus (ECF No. 1), (2) **GRANTS** Cuellar a certificate of appealability, and (3) **GRANTS** Cuellar permission to appeal *in forma pauperis*.

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: June 6, 2023

23

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 6, 2023, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126